Opinion issued October 18, 2007






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00011-CV






IAN MIKOWSKI AND TONI ENGLISH, Appellants


V.


DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee






On Appeal from the 306th District Court 

Galveston County, Texas

Trial Court Cause No. 06CP0004 






MEMORANDUM OPINION

 Following a jury trial, the trial court terminated the parental rights of
appellants, Ian Mikowski and Toni English, to their minor son, C.M. Presenting five
issues each, Mikowski and English challenge the legal and factual sufficiency of the
evidence to support the findings supporting the termination. In addition, Mikowski
contends that he did not receive effective assistance of counsel, and English raises an
evidentiary challenge. 

 We affirm.

Background


 C.M. was born on January 3, 2006. Two days later, the Department of Family
and Protective Services ("DFPS") became involved with the family after it was
notified by the hospital that C.M. had tested positive for marijuana. C.M. was
initially placed with English's sister, Amber Sorenson. Not long after, Mikowski and
English contacted DFPS stating that they no longer wished for C.M. to be placed with
Sorenson. Because the parents were unable to provide a suitable relative placement,
DFPS took temporary custody of C.M. on January 23, 2007. At that time, C.M. was
placed with a foster family. 

 DFPS ultimately sought to terminate Mikowski's and English's parental rights
to C.M. The case went to trial before a jury in December 2006, when C.M. was 11
months old. The trial court instructed the jury that Mikowski's and English's parental
rights could be terminated if it found, by clear and convincing evidence, that
Mikowski and English had each engaged in at least one activity described in
subsections (D), (E),or (O) of Family Code section 161.001(1) and if it found that
terminating the parent-child relationship was in the best interest of the child. See
Tex. Fam. Code Ann. §§ 161.001(1)(D), (E), (O), 161.001(2) (Vernon Supp. 2006). 
Based on these instructions, the jury found that Mikowski's and English's parental
rights to C.M. should be terminated. 

 In conformity with the jury's verdict, the trial court signed two orders of
termination, one for Mikowski and one for English. The same grounds for
termination are listed in each termination order. Specifically, the trial court stated in
each order that it had found by clear and convincing evidence that the respective
parent had committed one or more of the following acts:

 6.2.1. knowingly placed or knowingly allowed [C.M.] to remain in
conditions or surroundings which endanger the physical or
emotional well-being of [C.M.]; (1)


 6.2.2. engaged in conduct or knowingly placed [C.M.] with persons who
engaged in conduct which endangers the physical or emotional
well-being of [C.M.]; (2) 


 6.2.3. failed to comply with the provisions of a court order that
specifically established the actions necessary for [Mikowski or
English, respectively] to obtain the return of [C.M.] who [has]
been in the permanent or temporary managing conservatorship of
[DFPS] for not less than nine months as a result of [C.M.'s]
removal from the parent under Chapter 262 for the abuse or
neglect of [C.M.]. (3)

The termination orders also state that the trial court found, by clear and convincing
evidence, that it was in C.M.'s best interest for Mikowski's and English's parental
rights to be terminated. 

 Mikowski and English each appealed. 

Mikowski's Appeal 


 We first determine whether Mikowski complied with Family Code section
263.405(b), which requires an appellant to file, not later than the 15th day after the
date a final termination order is signed, "a statement of the point or points on which
the party intends to appeal." Tex. Fam. Code Ann. § 263.405(b) (Vernon Supp.
2006). The statement may be filed separately or it may be combined with a motion
for new trial. Id. The legislature expressly mandates that we "may not consider any
issue that was not specifically presented to the trial court in a timely filed statement
of the points on which the party intends to appeal or in a statement combined with a
motion for new trial." Id. § 263.405(i). 

 In this case, the record reflects that Mikowski failed to timely file his statement
of points pursuant to section 263.405(b). The trial court signed the termination orders
on December 19, 2006. Mikowski had already filed his notice of appeal on December
14, 2006. No statement of points on which Mikowski intended to appeal
accompanied the notice of appeal, and Mikowski did not file a statement of points
within the 15 day period following the signing of the order. 

 Seventeen days after the trial court signed the termination orders, on January
5, 2007, Mikowski filed a "First Amended Notice of Appeal, Statement of Points to
be Appealed, Motion for New Trial, and Request for Free Record." In the amended
notice, Mikowski for the first time identified points that he intended to appeal. 
Though Mikowski's statement was filed only two days after the 15-day deadline, the
plain language of Family Code section 263.405(i) precludes this Court from
considering Mikowski's appellate issues, as draconian as this may seem. See id. 
Consequently, we affirm the order terminating the parental-child relationship between
Mikowski and C.M. See Pool v. Tex. Dep't of Family & Protective Servs., 227
S.W.3d 212, 216 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (affirming decree
terminating father's parental rights as result of father's failure to comply with Family
Code section 263.405(b)).

English's Appeal


 English presents five issues on appeal. Specifically, in the first four issues,
English challenges the legal and factual sufficiency of the trial court's findings
supporting the termination of her parental rights to C.M. In her fifth issue, English
challenges an evidentiary ruling of the trial court. 

A. Statement of Points

 As mentioned, the trial court signed the order terminating English's parental
rights to C.M. on December 19, 2006. English timely filed her statement of points
to be appealed on December 18, 2006, within 15 days of the signing of the
termination order. See Tex. Fam. Code Ann. § 263.405(b). In her timely filed
statement of points, English raised the legal and factual sufficiency complaints that
she now raises on appeal in her first four issues. Thus, we may consider those issues
on appeal.

 On January 11, 2007, 23 days after the trial court signed the termination order,
English amended her statement of points to include the evidentiary issue she now
raises on appeal in issue five. Because this issue was not timely included in her
statement of points, we may not consider it on appeal. See id. § 263.405(i).

B. Legal and Factual Sufficiency Challenges

 Because English's third and fourth issues are dispositive, we address them first.
In her third issue, English contends that the evidence is legally and factually
insufficient to support a finding that, under Family Code section 161.001(1)(O), she
"failed to comply with the provisions of a court order that specifically established the
actions necessary for [English] to obtain the return of [C.M.] . . . ." See Tex. Fam.
Code Ann. § 161.001(1)(O). In her fourth issue, English challenges the legal and
factual sufficiency of the evidence to support the finding that the termination of
English's parental rights was in C.M.'s best interest. See id. § 161.001(2) (Vernon
Supp. 2006).

 1. Burden of Proof and Standard of Review 

 The burden of proof at trial in parental-termination cases is by clear and
convincing evidence. Tex. Fam. Code Ann. § 161.001; In re J.F.C., 96 S.W.3d 256,
263 (Tex. 2002). Section 161.001 of the Texas Family Code provides the method by
which a court may involuntarily terminate the parent-child relationship. See Tex.
Fam. Code. Ann. § 161.001. Under this section, a court may order the termination
of the parent-child relationship if the court finds, by clear and convincing evidence,
that (1) one or more of the acts enumerated in section 161.001(1) was committed and
(2) termination is in the best interest of the child. Id. 

 "Clear and convincing evidence" means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to the truth
of the allegations sought to be established. Tex. Fam. Code. Ann. § 101.007
(Vernon 2002); J.F.C., 96 S.W.3d at 264. This heightened burden of proof results in
a heightened standard of review.

 When determining legal sufficiency, we review all the evidence in the light
most favorable to the finding "to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true." J.F.C., 96 S.W.3d
at 266. To give appropriate deference to the factfinder's conclusions, we must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so. Id. We disregard all evidence that a reasonable
factfinder could have disbelieved or found to have been incredible. Id. This does not
mean that we must disregard all evidence that does not support the finding. Id. 
Disregarding undisputed facts that do not support the finding could skew the analysis
of whether there is clear and convincing evidence. Id. Therefore, in conducting a
legal-sufficiency review in a parental-termination case, we must consider all of the
evidence, not only that which favors the verdict. See City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005).

 In determining a factual-sufficiency point, the higher burden of proof in
termination cases also alters the appellate standard of review. In re C.H., 89 S.W.3d
17, 26 (Tex. 2002). "[A] finding that must be based on clear and convincing evidence
cannot be viewed on appeal the same as one that may be sustained on a mere
preponderance." Id. at 25. In considering whether evidence rises to the level of being
clear and convincing, we must consider whether the evidence is sufficient to
reasonably form in the mind of the factfinder a firm belief or conviction as to the truth
of the allegation sought to be established. Id. We consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that disputed
evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. "If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually insufficient." Id.

 The natural rights that exist between parents and their children are of
constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
Therefore, termination proceedings should be strictly scrutinized, and the involuntary
termination statutes should be strictly construed in favor of the parent. Id. at 20-21. 
However, "[j]ust as it is imperative for courts to recognize the constitutional
underpinnings of the parent-child relationship, it is also essential that emotional and
physical interests of the child not be sacrificed merely to preserve that right." C.H.,
89 S.W.3d at 26.

 2. Failure to Comply with Service Plan: Section 161.001(1)(O)

 One of the grounds supporting termination of English's parental rights was
Family Code subsection 161.001(1)(O). Pursuant to that subsection, the termination
order reflects that trial court found, in relevant part, that English had not complied
with the provisions of a court order that specifically established the actions necessary
for her to obtain C.M.'s return. See Tex. Fam. Code Ann. § 161.001(1)(O). We turn
to the record to determine whether legally and factually sufficient evidence supports
this finding.

 The record reflects that the court required English to complete individual
counseling and parenting classes, to submit to random drug tests, and to maintain
suitable housing and employment. At trial, English admitted that she did not
complete all of the requirements of the court-ordered service plan. English also
testified that she was aware that such failure to comply could result in termination of
her parental rights. Nonetheless, on appeal, English contends that the evidence is
legally and factually insufficient to support termination because she "substantially
complied with the services that the court ordered her to complete." 

 In support of this assertion, English does not cite, and we cannot find, any legal
authority holding that a parent's substantial compliance with court-ordered services
will preclude a section 161.001(1)(O) finding. See In re T.T, 228 S.W.3d 312, 319
(Tex. App.--Houston [14th Dist.] 2007, no pet.) (noting that court found no cases to
support parents' substantial compliance argument). To the contrary, courts have held
that evidence of substantial compliance will not defeat a section 161.001(1)(O)
finding on legal and factual sufficiency grounds. See, e.g., In re T.N.F., 205 S.W.3d
625, 630-31 (Tex. App.--Waco 2006, pet. denied); In re D.L.H., No.
04-04-00876-CV, 2005 WL 2989329, at *2 (Tex. App.--San Antonio Nov.9, 2005,
no pet.) (mem. op.). In any event, we disagree that English "substantially complied"
with her the court-ordered service plan.

 The record reflects that English failed to complete her individual counseling
and parenting classes and failed to take all random drug tests as required by the court. 
At trial, English offered a number of excuses for her failure to complete these
services. 

 English testified that she did not complete the random drug tests because no
one had explained the process to her. Regarding her failure to complete individual
therapy, English claimed that she went to her therapist's office to initiate therapy. In
contrast, the therapist testified that she was not aware that English had come to her
office. According to the therapist, she never received any messages from English to
initiate therapy. The therapist testified that she called English to schedule therapy at
the number given on the DFPS referral form. The therapist stated that she left five
messages for English and that English never returned her calls.

 Regarding her failure to take parenting classes, English claimed that she called
the telephone number given to her but that no one answered. English testified that
she did not know when the classes began or where the classes were held. English
admitted that she never asked her caseworker about how to initiate the parenting
classes.

 English further testified that she understood that the parenting classes merged
with her individual therapy. English explained that she did not complete her
individual therapy because the court ordered DFPS to no longer pay for her services. 
English testified that she could not afford the therapy. 

 The record shows that the court did eventually order DFPS to discontinue
paying for English's services, but also reflects that the court did so because English
had failed to comply with certain provisions of the service plan up to that point. The
record further shows that the court had warned English that noncompliance with the
plan would result in discontinuation of payment for the services.

 DFPS also offered evidence that English failed to offer proof of stable housing
and employment, as required by the court. The record shows that, during the 11-month period between C.M.'s birth and the trial, English lived in five different
locations. She was evicted from two of these locations and threatened with eviction
from a third location. On appeal, English maintains that the evidence shows that she
has suitable housing. At trial, English testified that she, Mikowski, and her brother
were living in a three-bedroom trailer home, which she and Mikowski are "renting
to own." English contends that no evidence was offered to show that the trailer home
is not "safe and stable." DFPS points out that one of its caseworkers testified that 
"stability of home also means how many times you move."

 With regard to employment, English testified that she had worked at two or
three jobs since C.M. was born. She also testified at the December trial that she had
not worked since June. English explained that she lost her job in June when she was
arrested for credit card abuse and that she could not maintain employment because
she was incarcerated for 40 days in August and September. One of the caseworkers
assigned to C.M.'s case testified that English had never offered proof of employment
as required in the court order.

 Given the record, we conclude that the evidence, viewed in the light most
favorable to the section 161.001(1)(O) finding, was sufficiently clear and convincing
that a reasonable factfinder could have formed a firm belief or conviction that English
failed to comply with the provisions of a court order that specifically established the
actions necessary for her obtain the return of C.M. We further conclude that, viewed
in light of the entire record, any disputed evidence could have been reconciled in
favor of the section 161.001(1)(O) finding or was not so significant that the factfinder
could not reasonably have formed a firm belief or conviction that English failed to
comply with the provisions of a court order that specifically established the actions
necessary for her obtain the return of C.M. Accordingly, we hold that the evidence
was legally and factually sufficient to support the section 161.001(1)(O) finding.

 We overrule English's third issue. (4)

 3. Best Interest of C.M

 In her fourth issue, English challenges the legal and factual sufficiency of the
evidence to support the required finding that termination was in the C.M.'s best
interest. See Tex. Fam. Code Ann. § 161.001(2). 

 Some of the factors that an appellate court may consider in ascertaining the best
interest of a child include the non-exhaustive list set forth in Holley v. Adams. 544
S.W.2d 367, 371-72 (Tex. 1976). Those factors include the following: (1) the desires
of the child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs available to
assist these individuals to promote the best interest of the child; (6) the plans for the
child by these individuals or by the agency seeking custody; (7) the stability of the
home or proposed placement; (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one; and (9) any excuse for
the acts or omissions of the parent. Id. 

 These factors are not exhaustive. C.H., 89 S.W.3d at 27. The absence of
evidence about some of these factors does not preclude a factfinder from reasonably
forming a strong conviction or belief that termination is in the child's best interest. 
Id. "Best interest" does not require proof of any unique set of factors, nor does it
limit proof to any specific factors. Holley, 544 S.W.2d at 371-72. With the
foregoing legal precepts in mind, we review the legal and factual sufficiency of the
evidence to support the finding in this case that termination was in C.M.'s best
interest. 

 To support the best interest finding, DFPS cites the evidence discussed above
showing that English could not maintain suitable housing and employment and has
failed to take advantage of the court-ordered services offered to her. We agree that
such evidence is not only probative of the section 161.001(1)(O) finding, but also of
the best-interest determination. See C.H., 89 S.W.3d at 28. This evidence
demonstrates English's inability to provide C.M. with a stable home and to meet his
physical and emotional needs.

 DPFS also presented evidence that, despite being at risk of losing her child,
English engaged in criminal conduct following C.M.'s birth. In February 2006,
English was charged with committing the offense of credit card abuse, a state jail
felony. At that time, English was also charged with being in possession of a
controlled substance, Xanax. English claimed that she had a prescription for the
Xanax but one was never produced. English ultimately pleaded nolo contendere to
the controlled substance offense and received a sentence of 30 days in jail. 

 In June 2006, English was again charged with credit card abuse. English
pleaded guilty to the offense and was sentenced to five years' deferred adjudication
community supervision. As part of the plea agreement, the February 2006 and an
earlier 2004 charge for credit card abuse were dismissed. Related to the plea
agreement, English spent 40 days in jail in August and September of 2006, affecting
her ability to visit C.M., maintain employment, and participate in court-ordered
services. 

 DFPS also presented evidence probative of English's ability to keep C.M.
physically safe in the future. English admitted to smoking marijuana while pregnant
with C.M.--conduct that endangered C.M. even before he was born.

 The record also showed that, when C.M. was five days old, he was permitted
by the family members caring for him to stay one evening with English and Mikowski
at their apartment. On that evening, Mikowski and English's brother engaged in a
physical altercation in which English's brother punched Mikowski in the face. The
police were called to the apartment. When they arrived, the police observed
Mikowski standing in a bedroom holding a loaded shotgun. Newborn C.M. was still
in the apartment at the time. Mikowski was arrested with respect to the weapon and
English was arrested on outstanding warrants.

 The evidence further revealed that, on June 22, 2006, Mikowski was arrested
for committing an act of domestic violence against English. DFPS offered the
testimony of the manager of the apartment where the couple resided at that time. She
testified that she heard English say "Stop" and "Stop it. Don't push me. Leave me
alone." The apartment manager noted that English was crying. The manager then
observed Mikowski push English. The manager called the police, who arrested
Mikowski for the incident. Both Mikowski and English denied the manager's
account, and the charges against Mikowski were ultimately dismissed.

 Although C.M. is too young to express his desires, the evidence showed that
C.M. has bonded with his foster family and that the family wishes to adopt him. The
evidence indicated that C.M. is doing well in foster care and is on target
developmentally. The foster mother's testimony indicated that, when medical
concerns had arisen with C.M., she had promptly attended to them. For example,
C.M. will require surgery on his tongue for which the foster family has obtained
medical advice. 

 On appeal, English relies heavily on evidence presented at trial discrediting
C.M.'s foster parents as a suitable placement. The evidence showed that C.M.'s
foster family had an earlier "CPS referral" in which it was alleged that the parents
allowed their children to play unattended in the street. The report stated that one of
the foster parents was observed cursing at a driver and that the children were seen
playing in the street as late as 1:00 a.m. The foster mother testified that the
information in the report was false. 

 Evidence was also presented that the foster parents both had, at some point,
used marijuana and that the foster father drank beer. English contends that this
evidence weighs against the best interest finding under a number of the Holley
factors. 

 In addition to the evidence relied on by English relating to the foster parents, 
the record also shows that the foster parents have cared for 10 foster children since
they became licensed for foster care in 2003. The foster parents adopted one of the
foster children in 2005, a three-year-old girl. The foster mother testified that her little
girl and C.M. love each other. The foster mother also testified that she and her
husband annually attend child care, parenting, and safety classes to maintain their
foster parent status. 

 Undeniably, some evidence exists in the record that weighs in favor of English 
under the Holley factors. Overall, caseworkers who observed English with C.M.
during visitation testified that she acted appropriately and showed motherly affection
for C.M. Evidence was presented that English had purchased baby items to care for
C.M. The one home visit to English and Mikowski's apartment revealed that the
apartment appeared to be an adequate home for C.M. 

 Regarding her plans for the future, English testified that she planned to attend
college, though there is conflicting evidence whether English has obtained her
general education degree. English also testified that Mikowski is in the process of
joining the military and would assist in supporting C.M.

 In sum, the record contains evidence showing that English expresses a desire
to be a good parent to C.M. However, evidence cannot be read in isolation; it must
be read in the context of the entire record. The record reveals that, in the past, when
English has taken one step forward, she ultimately takes two back by committing a
criminal act, failing to follow through on services, failing to keep a job, moving from
home to home, or being with Mikowski when he exhibits violent tendencies. Given
the record, the factfinder in this case could have reasonably inferred that English 
would continue such pattern of conduct. Such an inference relates directly to
English's ability to provide a stable and suitable home for C.M. and indicates that
C.M.'s emotional and physical well-being may be endangered in the future if
English's parental rights are not terminated.

 We conclude that the evidence, viewed in the light most favorable to the
best-interest finding, was sufficiently clear and convincing that a reasonable fact
finder could have formed a firm belief or conviction that termination of the
parent-child relationship between English and C.M. was in C.M.'s best interest. We
further conclude that, viewed in light of the entire record, any disputed evidence
could have been reconciled in favor of the finding that termination of the parent-child
relationship between appellant and C.M. was in C.M.'s best interest or was not so
significant that the trial court could not reasonably have formed a firm belief or
conviction that termination was in C.M.'s best interest. Thus, we hold that the
evidence was legally and factually sufficient to support such finding.

 We overrule English's fourth issue.

Conclusion


 We affirm the orders of the trial court terminating the parent-child relationship
between Mikowski and C.M. and English and C.M.



 Laura Carter Higley

 Justice


Panel consists of Justices Taft, Hanks, and Higley.
1. Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp. 2006).
2. Id. § 161.001(1)(E). 
3. Id. § 161.001(1)(O). 
4. Because there is sufficient evidence of endangerment, we need not address English's
first and second issues challenging the sufficiency of the evidence to support findings
under subsections 161.001(1)(D),(E).