**In the Interest of T.N.F., H.R.F., H.R.F. & H.R.F., Children.**

No. 10–05–00327–CV.

Court of Appeals of Texas, Waco.

Aug. 30, 2006.

Brad K. Cune, Attorney At Law, Bryan, Lonnie E. Gosch, Attorney At Law, Hearne, Christopher W. Peterson, Peterson & Swearingen, College Station, for Appellant/Relator.

John C. Paschall, County & District Atty. for Robertson County, Franklin, Kirsten M. Castaneda, Michael A. Hatchell and Elissa G. Underwood, Locke, Liddell & Sapp LLP, Dallas, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

After a jury trial, the parental rights of Tammy Fulton, Ray Fulton, and Brandon Wobig to their respective children were terminated. All three appeal. We will affirm.

Tammy is the mother of all four children. Ray is the biological father of two of the children: H.Ra.F. and He.R.F., William Towery, the biological father of Hi.R.F., reached an agreement with the Department of Protective and Regulatory Services on conservatorship, and his parental rights are not at issue. Brandon is the biological father of T.N.F. All four children resided with Tammy and Ray. The Department had previously removed the children in 2001, but they were reunited with the Fultons in March 2003. The Department filed a petition in February 2004 alleging neglect or abuse (Ray's physical abuse of Tammy and the children), and the trial court signed an emergency protection order that named the Department temporary sole managing conservator. The Department set up service plans, but after the Fultons' sporadic compliance and Brandon's cessation of compliance and contact with the Depart-

ment and T.N.F., sought termination of their parental rights.

### Ray Fulton's Appeal

After the trial court ordered termination of Ray's parental rights, his appointed appellate attorney has filed an adequate *Anders* brief. *See In re E.L.Y.*, 69 S.W.3d 838, 840 (Tex.App.-Waco 2002, order); *see also Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel, in his brief, considers issues in areas relevant to an appeal of the termination of parental rights, including a detailed discussion of the evidence and the effectiveness of trial counsel. *See Sowels v. State*, 45 S.W.3d 690, 691 (Tex.App.-Waco 2001, no pet.). Counsel's brief contains references to both the record and applicable statutes, rules, and cases and discusses why counsel concludes that the record does not present any arguable issues. *See id.* Moreover, Ray was afforded an opportunity to respond to the *Anders* brief but did not.

█ We have conducted an independent review of the record to determine whether there are arguable grounds for appeal. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App.1991). Upon conducting that review, we determined that Ray had notice of the grounds for terminating his parental rights and had opportunity to defend against those grounds through the use of counsel, the presentation of evidence, and the cross-examination of adverse witnesses. Furthermore, the evidence presented at the trial is legally and factually sufficient to support the jury's finding that Ray committed the predicate acts [1] and that termination of Ray's paren-

---

1. The trial court ordered termination of Ray's parental rights based on jury findings that termination would be in the children's best interest and that Ray had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; (3) failed to support the children in accordance with his

tal rights was in the best interest of his children. *See In re A.W.T.*, 61 S.W.3d 87, 88–89 (Tex.App.-Amarillo 2001, no pet.). We conclude that there are no arguable issues in Ray's appeal and will affirm the trial court's order terminating his parental rights. Counsel must advise Ray of our decision and of his right to file a petition for review. *See Sowels*, 45 S.W.3d at 694.

### Brandon Wobig's Appeal

Based on jury findings, the trial court terminated the parental rights of Brandon Wobig to T.N.F. because termination would be in the child's best interest and because Brandon had: (1) knowingly placed or knowingly allowed T.N.F. to remain in conditions or surroundings that endangered her physical or emotional well-being; (2) engaged in conduct or knowingly placed T.N.F. with persons who engaged in conduct that endangered her physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of T.N.F., who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

 Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex.App.-Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001 (termed a predicate violation); and (2) that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp.2006); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.-Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex.1976); *Swate*, 72 S.W.3d at 766. If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.).

 Raising three issues, Brandon asserts that the evidence is legally and factually insufficient to support any of the three grounds for termination.[2] Both le-

---

ability during a period of one year ending within six months of the date of the filing of the petition; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children.

**2.** Because Brandon did not file a motion for new trial, the Department argues that he has not preserved a factual sufficiency complaint.

See Tex.R. Civ. P. 324(b)(2); *In re A.J.L.*, 136 S.W.3d 293, 301–02 (Tex.App.-Fort Worth 2004, no pet.). But we have held that a factual sufficiency complaint in a termination case may be reviewed even though it was not preserved in the trial court. *In re A.P.*, 42 S.W.3d 248, 254–56 (Tex.App.-Waco 2001, no pet.), *disapproved on other grounds, In re J.F.C.*, 96 S.W.3d 256, 267 n. 39 (Tex.2002). The Texas Supreme Court has not addressed

gal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex.2002) (discussing legal sufficiency review); *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002) (discussing factual sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* at 266–67 (footnotes and citations omitted); *see C.H.*, 89 S.W.3d at 25. We view the evidence in a neutral light when reviewing for factual sufficiency.

Because Brandon's third issue is dispositive, we address it first. He asserts that the evidence is legally and factually insufficient to support the finding that he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child. After DNA testing had confirmed Brandon as T.N.F.'s father, and after the trial court had placed T.N.F. and her siblings in the Department's temporary sole managing conservatorship, the trial court established in a temporary order twelve specific actions that Brandon was required to comply with, including: paying child support ($100 per month); psychological evaluation; counseling; parenting classes; drug and alcohol assessment; and compliance with the Department's service plan, which required Brandon to maintain regular contact with T.N.F., including face-to-face visits, and to obtain and maintain stable employment.

In his brief, Brandon concedes that he did not comply with all of these requirements. He completed a drug and alcohol dependency assessment, had a psychological evaluation, and attended five or six parenting classes, but he admits that it "is unquestionable, upon review of the record,

this issue or resolved the conflict among the courts of appeals. *See J.F.C.*, 96 S.W.3d at 276 & n. 71. Accordingly, we will address Brandon's factual sufficiency complaint.

that [he] did not complete all of the requirements of his Family Services Plan." Brandon visited T.N.F. in April and May 2004 and then stopped in June 2004. He admitted he could have tried visiting T.N.F. but didn't because it was a 148–mile round-trip. He stopped attending parenting classes and ceased contact with T.N.F. and the Department until between five and nine months later, and he only started visiting T.N.F. again about three months before trial.

Brandon's argument is that one of the *Holley* best-interest factors—"any excuse for the acts or omissions of the parent"—should relieve him of his noncompliance with the temporary orders and the service plan. *See Holley*, 544 S.W.2d at 371–72. He asserts that he could not both maintain employment and travel to visit T.N.F. and attend parenting classes because of distance and time constraints, which he claims excuses his noncompliance (he does not explain or excuse his failure to pay child support to the Department). Brandon presents no authority for his novel excuse argument, and the statute itself does not make a provision for excuses. *See* TEX. FAM.CODE ANN. § 161.001(1)(O) (Vernon Supp.2006) (providing as termination ground parent's failure to comply with court order). We thus agree with the Department that the evidence is legally and factually sufficient to support the finding that Brandon failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child.

While Brandon does not expressly raise as an issue the sufficiency of the evidence to support the best interest finding, because he has briefed it under his first issue and refers to it under issue three, we will address best interest. *See* TEX.R.APP. P. 38.1(e) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly presented.").

Tammy initially told Brandon that he was not T.N.F.'s father, but he became convinced that he was in July 2000. Tammy, who had married Ray, introduced T.N.F. to Brandon and let him keep her over a weekend. Tammy returned for T.N.F. about two weeks later, and thereafter Brandon did not see or keep up with T.N.F. for over a year. Brandon moved to Minnesota but returned to Texas in late 2001. He participated some in the Department's proceedings during the children's 2001 removal and cooperated with DNA testing that showed he was T.N.F.'s father. Four months passed without his visiting T.N.F. (he claimed Tammy would not let him see her, yet he took no steps to obtain custody or visitation), and he then left again for Minnesota. When T.N.F. was first returned to the Fultons after the Department's first investigation, the Fultons placed her with Brandon's sister, but he was unaware of it and did not see her.

In March 2003, when T.N.F. was age four and the Fultons had custody of her, Brandon returned to Texas and obtained the right to visit T.N.F. every other Sunday, but the Fultons never brought her to the meeting place. Brandon went to the Fultons one time to try to see T.N.F., but he was told he was not welcome. Then, in October 2003, Tammy asked Brandon to "rescue" her and the children from Ray. Brandon picked them up, and they stayed with him and his grandmother for about two weeks. Tammy and children then returned to Ray, and Brandon left for New Mexico. While there, he had his mother write down what had happened: Tammy had told him that Ray was abusing her and the children, and the children and the Fulton residence were very dirty. Brandon did not report these things to anybody. In April 2004, he returned again to Texas and

began working with the Department and his service plan.

 Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley*, 544 S.W.2d at 371–72. These factors are not exhaustive, and some of the listed factors may be inapplicable to some cases, while other factors not listed may also be considered when appropriate.[3]

3. In the context of permanency hearings, the Family Code identifies the following factors to consider in a best interest determination:

(a) In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.

(b) The following factors should be considered by the court, the department, and other authorized agencies in determining whether the child's parents are willing and able to provide the child with a safe environment:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM.CODE ANN. § 263.307(a-b) (Vernon 2002).

*C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of a child. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Servs.,* 907 S.W.2d 81, 86 (Tex.App.-Dallas 1995, no writ). But there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *Swate,* 72 S.W.3d at 767. On the other hand, the goal of establishing a stable permanent home for a child is a compelling state interest. *Dupree,* 907 S.W.2d at 87.

We will evaluate the sufficiency of the evidence primarily in the context of the *Holley* factors, but also with consideration of the Family Code's best interest factors found in section 263.307. *See In re J.I.T.P.,* 99 S.W.3d 841, 846–48 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (applying *Holley* factors and section 263.307 factors in best interest analysis); *see also* Lana S. Shadwick, Duke Hooten, & Charles G. Childress, *Grounds for Termination of Parental Rights,* in 2005–4 STATE BAR SECTION REPORT: FAMILY LAW 9, 10 (Fall 2005) (noting additional factors for determining best interest in section 263.307 when Department is party).

*Desires of the child:* None of the parties address any evidence about the desires of T.N.F., who was age six at the time of trial.

*Emotional and physical needs of the child now and in the future:* T.N.F. was in counseling and therapy; Brandon had never tried to contact her therapist to learn how she was doing. T.N.F., the oldest of the four children, is very close to her siblings, and Dr. James Shinder, a psychologist who evaluated the Fulton family, testified about the importance of sibling groups remaining together and said that T.N.F. would be harmed if separated from her siblings. The evidence on this factor weighs in favor of the finding that termination was in the child's best interest.

*Emotional and physical danger to the child now and in the future:* The only evidence pertaining to this factor is Dr. Shinder's testimony that T.N.F. would be harmed if separated from her siblings. The evidence on this factor weighs in favor of the finding that termination was in the child's best interest.

*Parental abilities of the individual seeking custody:* Brandon had attended five or six parenting classes but then stopped. He claimed the classes took too much time, caused him to miss work, and he wasn't learning anything he didn't already know. Dr. Shinder said that Brandon's rights should not be terminated, but he could not offer an opinion whether Brandon could provide and care for T.N.F.; he was concerned that Brandon had dropped out of the classes and the Department's services. Brandon's mother testified that he interacts with children "like any father would;" she did admit that Brandon's father was abusive to her children. This evidence neither weighs in favor of nor against the jury's best interest finding.

*Programs available to assist the individual to promote the child's best interests:* None of the parties address any evidence on this factor.

*Plans for the child by these individuals or by the agency seeking custody:* Brandon planned to have T.N.F. move in with him, his fiancée, and her children. The Department's plan was to have all four siblings adopted together; it had received six responses showing interest in a group adoption. Based on Dr. Shinder's testimo-

ny and the evidence of T.N.F.'s closeness with her siblings, this factor weighs in favor of the finding that termination was in the child's best interest.

*Stability of the home or proposed placement:* Brandon had maintained stable employment. At the time of trial, Brandon was in the process of divorcing his wife of four-and-a-half years. He was living with his fiancée (who was also in the process of divorcing), with whom he had a four-month-old son; she had a two-year-old and a thirteen-year-old. They all live in a two-bedroom, one-bath mobile home described as somewhat dilapidated. Brandon's salary was about $2,400 gross per month. If T.N.F. came to live with them, his fiancée would quit her job and Brandon would support her and all four children in their household on his salary. The evidence on this factor does not weigh against or in favor of the finding that termination was in the child's best interest.

*Acts or omissions of the parent that may indicate the existing parent-child relationship is not proper:* After Brandon had "rescued" Tammy and the children from Ray but Tammy then returned to Ray, Brandon did not report Ray's alleged abuse or the filthy condition of the Fulton home and the children. Brandon had sporadic or no contact with T.N.F. for most of her six years, and when the Department gave him the opportunity to regularly visit her, he stopped after about two months but then picked up again three months before trial. This evidence weighs in favor of the finding that termination was in the child's best interest.

*Any excuse for the acts or omissions of the parent:* Brandon explained that he could not both maintain employment and take the necessary time to travel to Bryan to visit T.N.F. and attend parenting classes. He said he had lost one job and a vehicle as a result of trying to comply with his service plan. He discussed with a caseworker having his services moved closer to his residence, but no follow up occurred. We conclude that this factor does not weigh against or in favor of the finding that termination was in the child's best interest. We also emphasize that poverty and economic duress are not factors, standing alone, sufficient to justify termination.

*Section 263.307 factors:* Of these thirteen factors, evidence on three factors weighs in favor of the finding that termination was in the child's best interest: subsection (1)—T.N.F.'s age and vulnerabilities pertaining to T.N.F.'s closeness with her siblings and the harm to T.N.F. if she were separated from her siblings; subsection (6)—the results of psychological evaluation pertaining to Dr. Shinder's opinion on the harm to T.N.F. if she were separated from her siblings; and subsection (10)—the willingness and ability of the parent to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision, pertaining to Brandon's failure to comply with the court order and service plan. The evidence on the remaining section 263.307 factors is either neutral or inapplicable.

Considering all the evidence in relation to the best interest factors in the light most favorable to the jury's findings, a reasonable trier of fact could have formed a firm belief or conviction that termination was in the child's best interest. And viewing all the evidence in a neutral light, we conclude that both the disputed and undisputed evidence favoring and disfavoring the verdict permits a reasonable factfinder to form a firm conviction and belief that termination was in T.N.F.'s best interest. The evidence on termination of Brandon's parental rights being in T.N.F.'s best interest is legally and factually sufficient.

We overrule Brandon's third issue, and because the termination order must be affirmed on that basis alone, we need not address his first two issues.

## Tammy Fulton's Appeal

In one issue, Tammy, through her appointed appellate counsel, asserts that her appointed trial counsel was ineffective. Indigent persons have a statutory right to counsel in parental-rights termination cases. TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp.2006). The Texas Supreme Court has held that this right includes the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). In analyzing the effectiveness of counsel in a parental-rights termination case, we follow a two-pronged standard set forth by the United States Supreme Court in *Strickland v. Washington* to determine whether an attorney's representation was so inadequate to violate the right to effective assistance of counsel. *Id.* at 545 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To show ineffectiveness of counsel in a termination case, the appellant must show (1) that counsel's assistance fell below an objective standard of reasonableness and (2) that counsel's deficient assistance, if any, prejudiced the parent. *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

*Strickland's* "record" requirement also applies to ineffective-assistance claims in termination cases: "An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *In re S.R.C.*, 2003 WL 22966325 at *2 (Tex.App.-Fort Worth Dec.18, 2003, no pet.) (mem.op.) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999)). In a parental-rights termination case where the parent asserts on appeal the ineffective assistance of trial counsel, but nothing in the record indicates trial counsel's reasons or strategies for the complained-of conduct, the lack of a record is practically always fatal to the parent's appellate issue under current Texas law. Because this inequity existed in this appeal, and because Tammy has no other recourse to address this issue, we abated and remanded the cause to the trial court for a hearing at which Tammy could develop an evidentiary record in connection with her ineffective assistance of counsel claim. *See In re T.N.F.*, 191 S.W.3d 329 (Tex.App.-Waco 2006, order).

Having received a supplemental reporter's record and supplemental briefs, we will now address the merits of Tammy's ineffective-assistance claims that her trial counsel: (1) failed to file a motion for new trial and failed to preserve complaints on the legal and factual sufficiency of the evidence; (2) had a conflict of interest with his client that hindered his representation of her; and (3) failed to undertake any pretrial discovery.

■ *Failure to preserve legal and factual sufficiency complaints:* Tammy complains that her trial counsel was ineffective in failing to file a motion for new trial to preserve complaints that the evidence is legally and factually insufficient.[4] But as noted above, we have held that a sufficiency complaint in a parental termination case may be reviewed even though it was not

---

4. Normally, to preserve a challenge to the legal sufficiency of the evidence, a party must do one of the following: (1) file a motion for instructed verdict; (2) object to the submission of a jury question; (3) file a motion for JNOV; (4) file a motion to disregard the jury's answer to a vital fact issue; or (5) file a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). A factual sufficiency complaint is preserved by filing a motion for new trial. *See* TEX.R. CIV. P. 324(b)(2).

preserved in the trial court.[5] *In re A.P.*, 42 S.W.3d 248, 254–56 (Tex.App.-Waco 2001, no pet.), *disapproved on other grounds, In re J.F.C.*, 96 S.W.3d 256, 267 n. 39 (Tex.2002). Thus, Tammy's trial counsel was not ineffective in failing to preserve these complaints, and Tammy could have raised them for the first time on appeal.[6]

■ *Conflict of interest:* Tammy and Ray were represented by separate trial counsel (The record is replete with evidence of Ray's physical abuse of Tammy and the children.). On the second day of trial, the Department's attorney informed the trial court that Tammy's trial counsel had not been permitted to visit with Tammy outside the presence of Ray and Ray's attorney and expressed a concern that this apparent conflict between Tammy and her trial counsel could form the basis of an ineffective-assistance claim. Tammy's trial counsel, Kent Schuster, concurred that Ray had not permitted him to visit alone with Tammy to prepare for trial; he had only very brief telephone discussions with her where she hung up on him, and he had written to her on the need to prepare for trial. Tammy told him that he was to deal only with Ray and Ray's counsel and that her witnesses were Ray's witnesses.

Tammy's complaint on appeal is that she and Schuster had a conflict (Ray's control over Tammy and her trial strategy) that prevented him from effectively assisting Tammy. The gist of the allegation is that Schuster did not resolve this conflict before trial so that he could effectively defend Tammy's parental rights by pursuing his own trial strategy, rather than Ray and Ray's trial counsel's strategy. The record from the supplemental hearing reflects the following: Schuster found it difficult to communicate with Tammy outside of Ray's presence, but he still met with her and Ray five or six times at his office. Tammy became annoyed with Schuster's advice that she leave Ray, as the Department had indicated there was a chance for her to keep her children if she got out of her relationship with Ray. Schuster abided Tammy's decision to stay with Ray; not only were they still together at the termination trial, they had just had another child. At the supplemental hearing, they were still together; Tammy confirmed that she had made a decision to stay with Ray, and it remained her decision. She also confirmed that it was her and Ray's strategy to get their children back and raise them together. As the Department aptly points out, Tammy's decision to join Ray's trial strategy and present themselves as a couple who could provide a good home environment for the children was the only viable alternative once Tammy rejected Schuster's advice to separate herself from Ray and pursue an individual strategy.

To the extent Tammy made a decision to stay with Ray and risk losing her children by joining in his strategy, rather than leaving Ray to have a chance to keep them, she cannot now fault Schuster for her decision and the result of the trial. Tammy has not established a conflict that rendered Schuster's assistance ineffective.

■ *Failure to undertake any pretrial discovery:* Tammy complains that her trial counsel failed to undertake any formal pre-

---

**5.** The Texas Supreme Court has not addressed this issue or resolved the conflict among the courts of appeals. *See J.F.C.*, 96 S.W.3d at 276 & n. 71; *cf. In re A.J.L.*, 136 S.W.3d 293, 301–02 (Tex.App.-Fort Worth 2004, no pet.). See note 2.

**6.** To the extent our abatement order implied that we have overruled *A.P.* and that sufficiency complaints must be preserved in the trial court in involuntary termination cases (*see T.N.F.*, 191 S.W.3d at 331 n. 5), we clarify that *A.P.* remains the law in our appellate district unless or until it is expressly overruled by us or the supreme court.

trial discovery so as to be prepared for trial. Schuster testified that, having previously worked on termination cases and knowing the Department's attorney, he knew the Department had an open-file policy and he in fact reviewed its file on Tammy. Thus, he did not serve any formal discovery on the Department because all of its information was available to him. Schuster asked Tammy for a list of potential witnesses, but she replied that her witnesses were Ray's witnesses. He also asked her to prepare for trial with him, but she refused, instead preparing for trial with Ray and Ray's attorney. At the supplemental hearing, Tammy testified that she felt she was prepared for trial. During trial, Tammy and Schuster passed notes back and forth, and Schuster was able to use her notes during cross-examination.

At trial, Tammy and Ray gave their attorneys three names to call as witnesses, and two were called by the attorneys, who jointly decided that the third was unnecessary. There is no record of what this third witness would have testified about. During the trial, Tammy never mentioned any other witnesses or evidence to Schuster. After trial, she alleged that he should have called the children's physician, a principal, and a teacher, none of whom testified at the supplemental hearing. And regardless, the children's school attendance records and medical records were in evidence, and Tammy was able to testify about their education and medical history. On this complaint, Tammy has not established that her trial counsel was ineffective. We overrule Tammy's ineffective assistance issue.

We affirm the trial court's termination order.