*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


 

# MEMORANDUM OPINION

No. 04-11-00869-CV

**IN THE INTEREST OF R.B.** and E.H.B., Minor Children

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2010CVJ000438-D4
Honorable Paul Gallego, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
        Sandee Bryan Marion, Justice
        Marialyn Barnard, Justice

Delivered and Filed:   April 11, 2012

AFFIRMED

This is an appeal of the trial court's order terminating Elvia M.'s parental rights. The trial court found that Elvia M. failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain the return of her children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services ("the Department") for not less than nine months as a result of the children's removal from her under chapter 262 for the abuse or neglect of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2010). The trial court also found that termination of Elvia's parental rights was in the children's best interest. On appeal, Elvia M. argues there is legally and

factually insufficient evidence to support the trial court's finding that she failed to comply with the court-ordered family service plan.[1] We affirm.

## STANDARD OF REVIEW

Parental rights may be terminated only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2010). When a parent challenges the legal sufficiency of the evidence on appeal, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When factual sufficiency of the evidence is challenged, "only then is disputed or conflicting evidence under review." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

## EVIDENCE

At the time of the termination hearing, Elvia M.'s children, R.B. and E.H.B., were five years-old and three years-old, respectively. They had been taken into the Department's custody after Maricela Ayala, an investigator with the Department, received a report of neglect and abuse of the children in December 2009. The report alleged that R.B. and E.H.B. "were seen malnourished and apparently with some bruises, and [Elvia M.] was [observed] to be under the

---

[1]On appeal, Elvia M. does not challenge the best interest finding.

influence of alcohol when she was staying at the halfway house." After searching for two months, on February 9, 2010, Ayala finally found Elvia M. and the children. Elvia M. was under house arrest and wearing an ankle monitor. During their first meeting, Elvia M. admitted to Ayala that she had been arrested for transporting drugs from Mexico to the United States, but claimed to have only done so because she had been ordered to by criminals connected to her dead boyfriend. Ayala did not remove the children at that time. Ayala later received a phone call from Elvia M.'s federal probation officer, who inquired about Elvia M.'s whereabouts. On March 1, 2010, Ayala went to Elvia M.'s apartment and spoke with her boyfriend who said Elvia M. was in jail again. The children were staying with Elvia M.'s boyfriend. According to Ayala, they were dirty and wearing oversized clothes. E.H.B. had a foul odor coming from his face. When Ayala asked Elvia M.'s boyfriend whether he could take care of the children, he said that he worked as a truck driver. Ayala then visited Elvia M. at the Webb County Jail. Ayala asked Elvia M. if there was any other placement for the children while she was incarcerated. Elvia M. could not give the name of a suitable person. Thus, Ayala took the children into state custody. According to Ayala, she was concerned for the children because Elvia M. was incarcerated, Elvia M. could not give a name of anyone suitable who could take care of the children, and her boyfriend was unable to care for the children based on his profession and his prior record of possession of a controlled substance. Ayala testified that when the foster mother took E.H.B. to the doctor, it was determined that E.H.B. had a foreign object up his nose that had caused an infection. On March 15, 2010, the Department filed an original petition for protection of the children, for conservatorship, and for termination of parental rights.

On April 15, 2010, Monica Rodriguez mailed the family service plan to Elvia M. in jail. The plan required Elvia M. to do the following:

(1)     to comply with federal probation requirements and resolve any pending matters with the federal probation department, and to refrain from any criminal activity;

(2)     to provide the Department with the names of suitable and adequate relatives who could care for the children;

(3)     to obtain and maintain employment in order to provide for herself and her children;

(4)     to obtain and maintain a hazard free home and develop healthy family relationships;

(5)     to complete individual and family counseling sessions to learn how to deal with stressful situations in an appropriate manner, including parenting classes that will be incorporated into the sessions;

(6)     to submit to a psychological evaluation to assess her ability to care for and protect her children;

(7)     to participate in family visits and demonstrate affection for her children;

(8)     to undergo random drug tests, to test negative for a period of six to nine months, to undergo an alcohol and drug assessment through the South Texas Alcohol and Drug Abuse Council, and to participate in any outpatient/inpatient treatment deemed necessary as part of the recommendations made during the assessment;

(9)     to pay support in an amount set by the court; and

(10)    to receive a favorable recommendation for reunification with her children.

Rodriguez testified that in July 2010 she met with Elvia M., who was now out of jail, and went over the family service plan with her in person. Rodriguez supervised Elvia M. for the next two months, and during those months, Elvia M. complied with the family visits and maintaining her whereabouts. However, Elvia M. did not comply with the requirements of employment, housing, individual and family counseling, the psychological evaluation, and child support.

Zulema Guillen, a caseworker with the Department, testified that she monitored Elvia M. for five months. According to Guillen, Elvia M. complied with the family service plan by having

a home, visiting with her children on a weekly basis, attending parenting classes, participating in random drug testing, and attending drug assessment at STCADA. However, Elvia M. did not have legal employment, did not remain drug free, did not receive a favorable recommendation from her therapist, and continued to engage in criminal activity. Guillen testified that the last time Elvia M. visited her children was August 25, 2011. According to Guillen, between that date and the time of trial, September 12, 2011, Elvia M. had not seen her children because she had been arrested for allegedly violating the terms of her federal probation. This detention stemmed from an incident in June 2011 where Elvia M. was arrested for failing to identify herself and for public intoxication. Guillen also testified that when she conducted a random drug test in February 2011, Elvia M. tested positive for cocaine. When Guillen conducted another random drug test on April 15, 2011, Elvia M. again tested positive for cocaine. Guillen further testified that Elvia M. never provided any proof of employment, nor did she receive a favorable recommendation for reunification with her children.

Elvia M.'s counselor, Daniel Brown, failed to give Elvia M. a favorable recommendation for family unification. He testified that he had met with Elvia M. about ten times:

> She initiated treatment in the last week of October [2010], and we had about five sessions. About the first week of December she disappeared. She didn't come back until about three months later. And then we initiated again – we tried to work with her again, but she only came to about two sessions and then she would have some kind of excuse and would be absent again. And she was very inconsistent and I had to discharge her.

Brown testified that Elvia M. did not show up for counseling sessions fifteen different times. In his opinion, Elvia M. was "back to square one" as she tested positive for cocaine in April 2011. According to Brown, Elvia M. did not show sufficient progress in the overall treatment. Brown testified that during her final session, Elvia M. had not begun accepting responsibility and was still blaming others.

Elvia M.'s attorney called another counselor, Bruce King, to testify on her behalf. King testified that he began seeing Elvia M. in July 2011 and had seen her for a total of eight sessions. He believed that Elvia M. would have the ability to care for her children if she continued with the twelve-step program. He "suggest[ed] ninety meetings in ninety days, a year learning the twelve-step program as well as SCAN or STCADA." On cross examination, King admitted that he had seen Elvia M. only eight times and that he prefers a minimum of three months, or at least twelve sessions, before making any professional recommendation. King testified that drug rehabilitation was important for Elvia M. because he believed her to be an alcoholic and, as of the time of the termination hearing, to still be addicted to alcohol. When asked if it was in the best interest of the children for Elvia M. to be reunited with her children, Brown testified that he "only had her for two months, so to make a recommendation as far as termination or anything like that, [he] wouldn't feel comfortable in doing that." When pressed if Elvia M. should be reunited with the children immediately, Brown testified,

> No. At this time I would say that she needs further counseling. I would recommend drug and alcohol treatment, even though she has been in one, I would recommend that again.

At the time of the termination hearing, Elvira M. was incarcerated at a detention center. There was no testimony as to when she would be released.

## DISCUSSION

Although Elvia M. argues that the evidence is legally insufficient to support the finding that she failed to comply with the court-ordered family service plan, she admits there was testimony she had failed to comply with the family service plan because she did not have legal employment, did not remain drug free, did not obtain a recommendation from her therapist, and continued to engage in criminal activity. But, Elvia M. argues this testimony "can only support a

finding that [she] failed to comply with *four* of the eleven requirements set forth above, and that [she] complied with the remaining seven requirements." (emphasis in original). However, that Elvia M. failed to comply with four of the requirements is legally sufficient to support the trial court's finding. *See In re T.T.*, 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *In re T.N.F.*, 205 S.W.3d 625, 630-31 (Tex. App.—Waco 2006, pet. denied); *In re D.L.H.*, No. 04-04-00876-CV, 2005 WL 2989329, at * 2 (Tex. App.—San Antonio 2005, no pet.).

With regard to factual sufficiency, Elvia M. emphasizes that she did comply with many of the plan's requirements. She had a home and attended parenting classes. She participated in random drug tests. She attended drug assessment at STCADA. And, until she was incarcerated, she did visit her children on a weekly basis. However, there was also testimony that she failed two random drug tests by testing positive for cocaine and that she had not made progress in her drug treatment.

Regarding the testimony that she had failed to abstain from criminal activity, Elvia M. points out that while there was testimony that she had been detained for allegedly violating her federal probation, she emphasizes there was no testimony regarding whether she had in fact been convicted of the alleged offenses that had caused her to be detained for allegedly violating the terms of her probation. However, while there was no testimony that she was convicted, there was testimony that she had a pattern of being arrested and incarcerated. With regard to her failure to obtain employment, Elvia M. points out that Guillen testified she had given Guillen a letter from Oscar Trevino stating she was working as a home health provider. However, Guillen also testified that she was not able to verify whether Elvia M. was indeed working, as the number listed on the letter had been disconnected.

In addition to the above, there was evidence that Elvia M. did not complete her counseling sessions and was discharged due to failure to attend sessions. Even King, a counselor called by Elvia M. to testify on her behalf, could not recommend unification with her children. Indeed, King testified that he believed Elvia M. to still be suffering from an addiction to alcohol. Considering the entire record, we hold the evidence is factually sufficient. *See In re J.S.*, 291 S.W.3d 60, 66-67 (Tex. App.—Eastland 2009, no pet.); *In re T.T.*, 228 S.W.3d at 320-21; *In re T.N.F.*, 205 S.W.3d at 631.

Karen Angelini, Justice