**Opinion filed January 15, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00192-CV

_____

## IN THE INTEREST OF A.N.R. AND Z.C.R., CHILDREN

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 49,237**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of A.N.R. and Z.C.R. The mother timely filed an appeal. In ten issues on appeal, she challenges the legal and factual sufficiency of the evidence to support termination. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a

rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed four of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that the mother had knowingly placed or

knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; that the mother had constructively abandoned the children; and that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children.

In July 2013, when the Department initially became involved with the family in this case, there were concerns about the parents' supervision and care of the children, the parents' use of marihuana, and their violent outbursts. The Department ultimately removed the children from their parents' care. At the time of removal, A.N.R. was three years old, and Z.C.R. was approximately six weeks old.

The mother admitted that she had used marihuana prior to removal and also while this case was pending and that she had taken prescription pills without a prescription. When ordered to take random drug tests while this case was pending, the mother was generally a no-show. At the time of the final hearing, two criminal charges were pending against the mother: minor in consumption and theft. The mother, who had been homeless for a period of time while this case was pending, had recently begun residing at Genesis Center, which offered a faith-based program to help the mother get her life together, get off drugs, and get her children back.

Although the father appeared in person at the final hearing, he had recently been arrested and was in jail for possessing a controlled substance. The father admitted that domestic violence occurred between him and the children's mother while the children "were there in the home." The father also admitted on-and-off use of marihuana and an inability to provide for his children.

Upon removing the children, the trial court ordered the mother to participate in various services that were necessary for her to obtain the return of her children. The uncontroverted evidence at trial showed that the mother did not complete the court-ordered services and, thus, failed to comply with the trial court's order. The mother continued to use drugs and did not appear for random drug tests as requested. She also failed to maintain stable housing, failed to complete parenting classes, failed to complete a drug and alcohol assessment, failed to attend counseling, refused to take medications prescribed for her by MHMR, and failed to go to Safe Place. The mother asserts on appeal that her failure to comply was due to her youthful age (nineteen years old at the time of the final hearing), lack of understanding, and lack of support.

The Department's goal for the children was termination and unrelated adoption. The Department's conservatorship caseworker testified that she believed termination of the parents' rights and adoption by the current foster family would be in the best interest of the children. The children's guardian ad litem, a CASA volunteer, agreed with the Department. At the time of the final hearing, the children had lived with their current foster parents—the prospective adoptive family—for about six months. The children were bonded with their foster parents and wanted to remain with them. Based upon A.N.R.'s statements and actions during therapy sessions, the CASA volunteer had concerns that A.N.R. had been

physically and sexually abused while in the care of her mother and father.[1] A.N.R., however, had blossomed in the care of the foster parents.

The record contains clear and convincing evidence that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the conservatorship of the Department for more than nine months and who had been removed due to abuse or neglect. The mother used drugs during the removal period, and she failed to complete parenting classes, attend counseling, or maintain stable housing as required by her family service plan and ordered by the trial court. Section 161.001(1)(O) does not "make a provision for excuses" for the parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)). Clear and convincing evidence also reflected that the children had been removed due to abuse or neglect and that they had been in the care of the Department for well over nine months. Consequently, the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). The mother's ninth and tenth issues are overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required and because we have held that the evidence is sufficient to support the trial court's finding under subsection (O), we need not address the mother's third, fourth, fifth, sixth, seventh, or eighth issues in which she challenges the findings made pursuant to subsections (D), (E), and (N). *See* TEX. R. APP. P. 47.1.

In her first and second issues, the mother challenges the finding that termination of her rights would be in the best interest of her children. We hold that, based on clear and convincing evidence presented at trial and the *Holley*

---

[1]We note that the trial court took judicial notice of the court's file.

factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of each of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the mother and the foster parents seeking to adopt the children, the plans for the children by the Department, the instability of the mother's home, the stability of the children's placement, and the acts and omissions indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in the best interest of the children. *See id.* The mother's first and second issues are overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE


January 15, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6