**Opinion filed March 12, 2015**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-14-00252-CV**

_____

## IN THE INTEREST OF C.C.C. AND C.S.C., CHILDREN

---

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C45424**

---

**M E M O R A N D U M   O P I N I O N**

This is an appeal from an order of termination of the parental rights of the mother and father of C.C.C. and C.S.C. The mother voluntarily relinquished her parental rights. The father appeals. We affirm.

In two issues on appeal, the children's father challenges the legal and factual sufficiency of the evidence to support termination. The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. *Id.*

To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the father had committed three of the acts listed in Section 161.001(1): those found in subsections (E), (O), and (P). Specifically, the trial court found that the father had engaged in conduct or knowingly placed the children with persons who engaged in conduct that

2

endangered the children's physical or emotional well-being; that the father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect; and that the father (a) used a controlled substance in a manner that endangered the children and (b) either failed to complete a substance abuse treatment program or continued to abuse a controlled substance after completing a substance abuse treatment program. The trial court also found, pursuant to Section 161.001(2), that termination of the father's parental rights would be in the best interest of the children.

The evidence at the final hearing showed that the children—twin boys—were removed from the parents in July 2013 shortly after the children were born. A Department investigator, Jeremy Henard, testified that he went to the hospital after receiving an intake based upon the mother and one of the children testing positive for amphetamine at delivery. Henard subsequently determined that the meconium of both children tested positive for amphetamine and methamphetamine. At the hospital, Henard conducted a presumptive drug test on the parents; both were positive for methamphetamine. The father told Henard that he had used methamphetamine that day. He also admitted that he was a steady user and that he used methamphetamine four to five times a week. The father told Henard that he was unaware of the mother's use of methamphetamine. However, the nurses reported that both parents had been leaving the room for long periods of time without going to see the children, "just assumingly going out to smoke but were gone for extended periods of time." While Henard was talking to the nurses, the parents left the hospital without checking the mother out of the hospital.

After removal, the father was ordered by the trial court to complete various tasks, including those listed in the father's family service plan. The conservatorship caseworker, Christy Light, testified that the father completed some of the requirements of the service plan but not all of them. The father tested positive for drugs while the termination case was pending. He was also arrested during the case and was incarcerated at the time of the final hearing. He failed to complete the first drug treatment program that he attempted, but he did later complete a different drug treatment program. The father's visits with the children were somewhat sporadic, and he did not obtain safe and appropriate housing, did not obtain employment, did not refrain from illegal activity, did not complete individual counseling, and did not complete "Your Baby and You" classes.

At the time of trial, the father was incarcerated and was participating in the SAFP program. The father had been convicted of possession with intent to deliver and received a fifteen-year sentence in 2003. When the children were born, the father was on parole. He violated a condition of his parole while this termination case was pending, and he was arrested. The father testified that his parole was not revoked but, rather, was modified.

The father did not want his parental rights to be terminated. He admitted that he could not care for the children at the time of the final hearing because he was incarcerated, but he said that he was due to be released in about four months and would then either go to a halfway house or a "1B program." The father hoped that the children could be placed with his cousin or remain with the current foster placement until the father was able to care for them. The father also stated that he is "clear headed" now and that he is not going to use drugs again.

The children lived with the same foster parents from the day they were released from the hospital to the date of the final hearing. The children were bonded with those foster parents, who provided a safe, appropriate, and stable

4

home for the children. According to the guardian ad litem, the foster parents want the children to continue to have a relationship with their father—"as long as he's clean"—even if his rights are terminated and the foster parents are permitted to adopt the children. The guardian ad litem believed that termination of the father's rights would be in the best interest of the children. The Department's conservatorship caseworker also believed that it would be in the children's best interest to terminate the father's parental rights. Light testified that the safety risk had not been eliminated or reduced and that sobriety was still a concern. She thought that adoption would provide a safe, stable, drug-free environment for the children.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. *See* FAM. § 161.001(1)(O). Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)) (internal quotation marks omitted). Although the father did comply with some portions of the trial court's order, the evidence, as detailed above, was undisputed that the father failed to comply with all of the provisions of the service plan as ordered by the trial court. Thus, there was clear and convincing evidence that the father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children.

Furthermore, the record shows that, at the time of the final hearing, the children had been in the Department's care for over a year and that the children had been removed from the parents' care due to abuse or neglect. The supreme court

has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240. Evidence that the children and both parents tested positive for controlled substances—methamphetamine and amphetamine—at the time the children were born constituted sufficient evidence from which the trial court could have determined by clear and convincing evidence that the children had been removed because of a substantial risk of abuse or neglect.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's remaining arguments regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1. The father's first issue is overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence.

Upon considering the record as it relates to the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the father and the foster parents, the plans for the children by the Department, the instability of the father's home, the stability of the children's placement, acts and omissions indicating that the parent-child relationship was not a proper one, the father's criminal history, and the father's drug use, we hold that the evidence is sufficient to support the findings

that termination of the father's parental rights is in the best interest of the children. *See id.* The father's second issue is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE


March 12, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.