**Opinion filed June 9, 2015**



In The

# Eleventh Court of Appeals

———————

## No. 11-14-00345-CV

———————

## IN THE INTEREST OF E.N.A., A.A., J.J.P., AND M.P., CHILDREN

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C45379**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents of E.N.A., A.A., J.J.P., and M.P., the children. The children's mother appeals, as does the father of J.J.P. and M.P.[1] We affirm.

The mother presents two issues on appeal. In those issues, she challenges the factual sufficiency of the evidence to support termination and the trial court's finding

---

[1]We note that the father of E.N.A. and A.A. has not appealed. Therefore, for ease of reference, we refer to the father of J.J.P. and M.P. as "the father" in this opinion.

as to best interest. The father presents one issue challenging the legal and factual sufficiency of the evidence as to the findings regarding his conduct, but the father does not challenge the trial court's best interest finding.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship

is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the parents had each committed two of the acts listed in Section 161.001(1). The trial court found that the mother had committed acts found in subsections (D) and (O) and that the father had committed acts found in subsections (E) and (O). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the father had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's and the father's parental rights would be in the best interest of the children.

The evidence at the final hearing in November 2014 showed that the children—who at the time of the hearing were ages five, four, almost three, and almost two years old—had been removed from the parents in June 2013. The removal occurred after both parents violated a safety plan that had recently been imposed to protect the children. The safety plan resulted from an incident of domestic violence by the father against the mother in the presence of the children. The father was charged with assault causing bodily injury to a family member as a

result of that incident. He later pleaded no contest to that charge and was placed on community supervision.

At trial, the mother recanted much of what she had said about the father's domestic violence against her and against the children. However, evidence was introduced regarding the mother's previous statements about the father's violence. On the night of the original call in May 2013, Elizabeth Clement, an investigator for the Department, visited with the mother and the children's maternal grandmother. She was informed that the father had been violent since January 2013. The father had hit the mother and the children, including the baby, and the mother was scared for her children. The investigator testified that the father had threatened to hurt and kill the mother, the mother's family, and the children. The mother indicated that she was afraid to leave the father because he always threatened to physically harm her if she left him. A safety plan was initiated in which the father was to have no contact with the children, and the mother was to have supervised contact only. Both parents violated the safety plan.

After removal, the trial court ordered the parents to perform certain acts and to participate fully in the Department's family service plan; the trial court's order indicated that the parents' compliance would be necessary for them to obtain the return of their children. Each parent partially complied with the trial court's order and the service plan. The mother completed much of her service plan, but she failed to complete individual counseling and failed to participate fully in domestic violence counseling. The father did not complete individual counseling or the batterer's intervention program, and he also failed to maintain stable housing. The children's conservatorship caseworker, Jana Slemmons, described the father as aggressive and noncompliant.

Slemmons testified that the mother was not protective of the children and that the mother had a hard time handling all four children at visitation when the father

4

was not present. According to Slemmons, the mother wanted only three of the four children. Slemmons was concerned that the mother continued to participate in a loving and affectionate relationship with the father despite ongoing domestic violence and the concern for the welfare of the children. Slemmons testified that the mother's ongoing relationship with the father, a relationship in which there were significant issues of domestic violence, was harmful to the children and created a safety risk for the children. The mother denied that she continued to maintain a relationship with the father, but the Department presented evidence that indicated that the parents maintained a relationship and that the father stayed at the mother's residence.

According to Slemmons, the children were placed in appropriate foster homes where they were doing phenomenally, were thriving, were happy, and were recovering from earlier problems. The older two children participated in therapy. Both of the foster homes in which the children were placed were adoptive placements. Slemmons believed that termination of the parents' rights would be in the best interest of the children. The parents did not agree that termination would be in the children's best interest.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the parents failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children. *See* FAM. § 161.001(1)(O). Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)) (internal quotation marks omitted). Although the parents did comply with some portions of the trial court's order, the evidence, as detailed above, was undisputed that both parents failed to comply with all of the

provisions of the service plan as ordered by the trial court. Thus, there was clear and convincing evidence that the parents failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children.

Furthermore, the record shows that, at the time of the final hearing, the children had been in the Department's care for well over a year and that the children had been removed from the parents' care due to abuse or neglect. The Texas Supreme Court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parent's remaining arguments regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1. The mother's first issue and the father's sole issue are overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence.

Upon considering the record as it relates to the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the mother, the father, and the foster parents; the plans for the children by the Department; the instability of the parents' home; the stability of the children's placement and proposed placement; the

acts and omissions indicating that the parent-child relationship was not a proper one; the ongoing domestic violence between the parents, at least some of which occurred in the children's presence; the mother's continued relationship with the father, a man whom she had accused of abusing the children, and the mother's permitting the father to see the children in violation of a protective order, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in the best interest of the children. *See id.* The mother's second issue is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE


June 9, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.