

## NUMBER 13-11-00545-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### IN THE INTEREST OF F.H.T., A CHILD

**On appeal from the 135th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION
**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Benavides**

Appellant, N.H. ("Mother"), appeals the trial court's order which terminated her parental rights over her daughter, F.H.T ("Daughter").[1] *See* TEX. FAM. CODE ANN. § 161.001 (West 2008). By one issue, Mother challenges the factual and legal sufficiency

---

[1] In order to protect the minor children's identities, we will use aliases to identify the parties and the children involved in this appeal. *See* TEX. R. APP. P. 9.8.

of the evidence to support the termination of her parental rights. We affirm the trial court's judgment because clear and convincing evidence supports the termination of Mother's parental rights over Daughter and it is in the child's best interest.

## I.    BACKGROUND[2]

From December 2006 until March 2010, Daughter was under the non-parent joint managing conservatorship of K.K. ("Uncle") and A.K. ("Aunt") pursuant to an agreed final order in a suit affecting the parent-child relationship. The agreed order stemmed from prior action taken by the Texas Department of Family and Protective Services ("DFPS") shortly after Daughter's birth to remove her from Mother's care after it was discovered that Daughter was an infant born with opiates in her system.[3]

On March 30, 2010, Uncle, Aunt, and their attorney met with DFPS officials to notify them that they were experiencing difficulties in caring for Daughter. DFPS supervisor Nicole Green testified that Uncle was concerned about jeopardizing his job for missing so much time from work because he had to accompany Daughter to speech and occupational therapy appointments. Uncle also discussed his failing health. Green testified that Aunt also notified DFPS that she was dealing with her own medical issues which made it difficult for her to care for Daughter. Uncle and Aunt sought alternative placement for Daughter from DFPS. The next day, DFPS filed a motion for emergency

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. 47.4.

[3] Daughter's biological father did not appear at the underlying trial, where his parental rights were terminated, and is not a party to this appeal.

temporary orders over Daughter to place her in a foster home and also filed a petition to terminate Mother and Father's parental rights to Daughter. DFPS supervisor Nicole Green testified that the urgency of the alternative placement was due to an opening at one of the area foster homes. On April 9, 2010, an adversary hearing was held, *see* TEX. FAM. CODE ANN. § 262.205 (West 2008), at which the trial court appointed DFPS as Daughter's temporary managing conservator. The trial court further ordered that Mother, Daughter's father, Uncle, and Aunt have limited access to and possession of Daughter. Additionally, the trial court itemized several court-ordered services required of Mother to obtain return of Daughter, including:

(1) psychological and psychiatric evaluation;

(2) counseling;

(3) parenting classes;

(4) drug and alcohol assessments and testing; and

(5) compliance with the service plan.

After months of Mother's non-compliance with the temporary orders, DFPS sought termination of Mother's parental rights again. On March 28, 2011,[4] a bench trial on the merits commenced, and the trial court found that DFPS met its burden by clear and convincing evidence to support termination of Mother's parental rights. In its termination order, the trial court found that Mother:

(1) constructively abandoned [Daughter] who ha[d] been in the [. . .] temporary managing conservatorship of [DFPS] for not less than six

_____

[4] On March 31, 2011, Uncle passed away. Accordingly, the trial court recessed the proceedings until June 2, 2011.

3

months, and: (i) [DFPS] has made reasonable efforts to return [Daughter] to [Mother]; (ii) [Mother] has not regularly visited or maintained significant contact with [Daughter]; and (iii) [Mother] has demonstrated an inability to provide [Daughter] with a safe environment, *see* TEX. FAM. CODE ANN. § 161.001(1)(N);

(2) failed to comply with the provisions of a court order that specifically established the actions necessary for [Mother] to obtain the return of [Daughter] who has been in the [. . .] temporary managing conservatorship of DFPS for not less than nine months as a result of [Daughter's] removal from [Mother] under Chapter 262 for the abuse or neglect of the child, *see id.* § 161.001(1)(O) (West 2008);

(3) contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261, *see id.* § 161.001(1)(I); and

(4) DFPS has made reasonable efforts to return [Daughter] to [Mother].

The trial court also found that termination of parental rights was in Daughter's best interest. Mother appealed.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Termination of a parent-child relationship may be ordered if a trial court finds by clear and convincing evidence that the parent has acted or omitted conduct in violation of one of the statutory grounds in section 161.001(1) and that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental termination, and that one act or omission of conduct satisfies the first-prong); *In re E.M.N.*, 221 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.).

We review challenges to the factual sufficiency of the evidence in a termination proceeding by giving "due deference" to the fact-finder's findings, and we do not "supplant [its] judgment" with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)

4

(per curiam). We "inquire 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations'" from the entire record. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). When conducting a legal sufficiency analysis in a parental-termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d at 266).

### III.    ANALYSIS

In her sole issue on appeal, Mother challenges the sufficiency of the evidence to sustain the trial court's parental-termination order.

The trial court's June 2010 family service plan, *see* TEX. FAM. CODE ANN. § 263.102 (West 2008), stated that Mother needed—among other things—to complete a psychological evaluation, maintain contact with the caseworkers monthly, attend and participate in counseling, and submit to random drug tests. By Mother's own

admission, and confirmed by DFPS caseworker Dawn Bustamante's testimony, Mother was non-compliant with the service plan.

Mother argues that her failure to satisfy the court-ordered service plan, resulting in termination of her parental rights, was unintentional due to her disability, medical issues, and financial hardship. While we agree with Mother's contention that parental rights are of "constitutional dimensions" and should be "strictly scrutinized," *see Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985), we disagree that Mother's offered excuses justify non-compliance with the court-ordered service plan. To the contrary, the family code does not provide for or allow excuses for failure to comply with court-ordered services in a termination case. *See In re C.M.C.*, 273 S.W.3d 862, 875 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied); *see also In re S.G.*, No. 02-11-00122-CV, 2011 WL 5527737, at *4 (Tex. App.—Fort Worth 2011, no pet.) (mem. op.). Instead, any excuse for non-compliance with a service plan is examined under the "best interest" prong of the termination analysis. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re T.N.F.*, 205 S.W.3d at 631; *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (holding that one factor that a court may consider in ascertaining a child's best interest is the excuse for the acts or omissions).

In addition to the excuse for the acts or omissions, other non-exhaustive factors a court may consider when evaluating a child's best interest include: (1) the emotional and physical needs and dangers of the child now and in the future; (2) the parental abilities of the individuals seeking custody; and (3) the acts or omissions of the parent

which may indicate that the existing parent-child relationship is not a proper one. *See Holley*, 544 S.W.2d at 372.

Here, DFPS caseworker Bustamante testified that since March 2010, Mother did not once visit Daughter, despite the child's availability. Bustamante also testified that Mother failed to comply with any service plan requirements due to her medical situation. Additionally, Bustamante testified that terminating Mother's parental rights was in Daughter's best interest because of the "struggle" that it would place on Daughter, who was age six at the time.

Mother's own testimony establishes her absence from Daughter's life for at least one year due to medical issues. Mother stated that she lived in a nursing home in Wharton, Texas at the time of trial and that her source of income was a disability benefit check, which helped pay for some of Daughter's needs. Mother also testified that she had visited with Daughter after Daughter was initially removed from her care, but when asked for the most recent date of a visit, Mother could not remember. Mother blamed Uncle and Aunt for preventing her from visiting with Daughter. Mother did recall that visitation with Daughter took place between 2008 and 2009, which is prior to when these proceedings were initiated in March 2010.

After giving the trial court's fact findings "due deference," our review of the record shows that sufficient evidence would support a reasonable factfinder's firm belief or conviction that (1) Mother failed to comply with the court-ordered service plan, *see* TEX. FAM. CODE ANN. § 161.001(1)(O); and (2) that the termination was in Daughter's best interest, considering the offered excuses for non-compliance of the service plan, the

living and physical conditions of Mother, and the emotional and physical needs of Daughter now and in the future. *See id.* § 161.001(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.F.B.*, 180 S.W.3d at 573. Accordingly, Mother's sole issue on appeal is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____<br>
GINA M. BENAVIDES,<br>
Justice

Delivered and filed the
21st day of June, 2012.