02-12-004-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00004-CV

 

 


 
 
 In the Interest of T.L.R., Minor Child
 
 


 

 

----------

FROM County
Court at Law No. 2 OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
eight issues, appellant D.S. appeals the trial court’s order terminating his
parental rights to his son, Terrence Louis Rogers.[2] 
He contends that the evidence is legally and factually insufficient to support
the grounds for termination and the trial court’s finding that termination is
in the child’s best interest.  We affirm.

Standard
of Review

Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001 (West 2011); see also § 161.206(a) (West 2008). 
Evidence is clear and convincing if it “will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.”  Id. § 101.007 (West 2008).  Due process
demands this heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002); see In re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007)
(contrasting standards for termination and modification).

          In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.

We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the verdict with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that the parent engaged in the behavior described in one of the subsections of
section 161.001(1) and that the termination of the parent-child relationship
would be in the best interest of the child.  Tex. Fam. Code Ann.
§ 161.001; In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).  If, in light
of the entire record, the disputed evidence that a reasonable factfinder could
not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction in the truth of
its finding, then the evidence is factually insufficient.  In re H.R.M.,
209 S.W.3d at 108.

Sufficiency
of the Evidence on Failure to Comply with Service Plan

In
his seventh and eighth issues, appellant contends that the evidence is legally
and factually insufficient to support the jury’s finding that he failed to
comply with the requirements of a court-ordered service plan.

Applicable Law and Facts

To terminate parental rights based on Section
161.001(1)(O), a trial court must find by clear and convincing evidence that
the parent failed to comply with the provisions of a court order that
specifically established the actions necessary for the parent to obtain the
return of the child who has been in the permanent or temporary managing
conservatorship of the Department of Family and Protective Services for not
less than nine months as a result of the child’s removal from the parent under family
code chapter 262 for the abuse or neglect of the child.  Tex. Fam. Code Ann. §
161.001(1)(O).  Appellant concedes that Terrence was in the Department’s
custody for at least nine months and does not dispute that he was removed as a
result of abuse or neglect.  Instead, he argues that the Department did not
meet its burden of proof to establish that he failed to comply with the trial
court’s order requiring him to complete the requirements of the service plan.[3]

Terrence
was born on July 16, 2009.  In June 2010, appellant went to jail after being
charged with an offense for which the grand jury later no-billed him.  While he
was in jail, the Department removed Terrence from his mother (Mother) after
police found her passed out in a car that was parked in an alley, with the
windows rolled up and no air conditioning on.[4]  Terrence was in the back
seat with his cousins, tied into his carseat because the straps were broken.

Appellant
was released from jail in September 2010.  He testified that as soon as he got
out of jail, he and his mother went to the Department’s offices to find out how
to get Terrence returned to him.  But appellant had not yet been confirmed as
Terrence’s father, and he had requested that DNA testing be performed to
confirm whether Terrence was his biological child.  Test results confirmed
paternity in October 2010.  A Department supervisor testified that a service
plan should have been prepared at that time, but the caseworker assigned to the
case did not prepare one until January 2011.  That service plan, which the
trial court incorporated as an order, required appellant to, among other
things, comply with all current and future court orders, avoid all criminal
activity and any persons engaging in criminal activity including persons using
illegal drugs, maintain and obtain a legal source of income, obtain and
maintain a safe and stable home environment, complete random drug screens on
the date requested, and test negative for illegal substances.  Appellant signed
the service plan.

Appellant
admitted at trial that he had failed to comply with all of the court orders in
this case.

In
particular, appellant admitted that he had failed to obtain stable employment
and housing.  He explained that he could not find steady work because he did
not have an ID card; although Department workers tried to help him obtain his
Oklahoma birth certificate and other documents he would need to obtain an ID
card, he was still waiting on his birth certificate at the time of trial.  Appellant
testified that after he got out of jail, he lived in a house next door to his
mother that she owned, but the Department made him move because his brother,
whom the Department suspected was a drug user, lived with his mother next door,
and they were concerned about the situation.  Without living in the house owned
by his mother, appellant could only afford to sleep at friends’ houses on a
temporary basis or in a hotel when he could get the money.  But appellant
testified that the Department allowed him to move back into the house next to his
mother’s in January 2011, and except for when he went to rehab in March and
April 2011, he continued to live there until the time of trial.  At the time of
trial, he paid utilities for that house but no rent.  He did not have a full-time
job; instead, he worked at odd jobs.

Appellant
also admitted that he had smoked marijuana before going to rehab in March 2011,
but he denied using methamphetamine.  The intake from rehab, however, shows
that he told the counselor he had smoked both marijuana and methamphetamine in
the thirty days before attending rehab and that he had used drugs multiple times
in the week before rehab.  He said he smoked the marijuana because he was
depressed about his friend’s committing suicide and his son’s being in the
Department’s care.  Mother testified that she used methamphetamine with
appellant before and after he went to rehab.

Appellant
admitted that he did not submit to random drug screens and did not submit to
hair follicle testing ordered by the trial court[5] in January 2011; he said
he tried to schedule weekly drug tests with CPS instead to build up a positive case
history.  The Department supervisor testified that appellant never requested
weekly drug tests, and although he had refused every other drug test requested
by the Department, he specifically requested one on July 29, 2011.  She thought
he must have believed he would be clean that day and not the others.  The
Department was never able to get a baseline drug test to compare to future
tests.  Appellant admitted being an addict.  He also failed to provide the
Department with a medical release so that they could obtain medical and mental
health records.

Mother
testified that in January 2011, appellant came into the place where she was
then living, pushed her, and cut the finger of a man she was living with.  She
was pregnant with appellant’s second child at the time.  In February 2011, he
showed up at Dollar General where she was shopping and hit her on the side of
her face.  In June 2011, he hit her on the side of her face with a beer bottle
and left hand marks on her arm.  But Mother testified that she would not press
charges against appellant because she loved him.  She said that there had been
only a couple of instances of domestic violence in the past before Terrence’s removal
but things “really went downhill” after that.

The Department
supervisor testified that she participated in making appellant’s service plan
and going over it with him.  She also testified that the Department made
information available to appellant to help him complete his service plan, but “[t]here
was very little cooperation.”

Analysis

Despite
appellant’s admission that he failed to comply with his service plan, his
argument is that he substantially complied with the material terms of the
plan.  But it is well settled that the family code does not provide for excuses
for failure to complete court ordered services, nor does it consider
“substantial compliance” to be the same as completion. See In re S.G.,
No. 02-11-00122-CV, 2011 WL 5527737, at *4 (Tex. App.––Fort Worth Nov. 10,
2011, no pet.) (mem. op.); In re M.C.G., 329 S.W.3d 674, 675–76 (Tex. App.––Houston
[14th Dist.] 2010, pet. denied) (op. on reh’g).  Rather, any excuse for failing
to complete a family services plan goes only to the best interest
determination.  In re S.G., 2011 WL 5527737, at *4.

          Based
on the above evidence, including appellant’s explicit admissions that he failed
to complete certain aspects of the service plan, we conclude and hold that the
evidence is legally and factually sufficient to support the jury’s finding that
appellant failed to comply with a court-ordered service plan as set forth in
family code section 161.001(1)(O).  See In re T.N.F., 205 S.W.3d 625,
630–31 (Tex. App.––Waco 2006, pets. denied), overruled in part on other
grounds by In re A.M., No. 10-12-00029-CV, 2012 WL 3242733 (Tex. App.—Waco
Aug. 9, 2012, no pet. h.) (mem.op.).  We overrule appellant’s seventh and
eighth issues.

          Because
we have held that the evidence is sufficient to support the jury’s findings on
at least one of the conduct grounds, we need not address appellant’s second
through sixth issues challenging the other conduct grounds found by the jury.  See
In re S.B., 207 S.W.3d 877, 886 (Tex. App.––Fort Worth 2006, no pet.).

Sufficiency
of the Evidence on Best Interest

In
his first issue, appellant contends that the evidence is legally and factually
insufficient to support the jury’s finding that termination was in Terrence’s
best interest.

Applicable
Law

There is a strong presumption that keeping a
child with a parent is in the child’s best interest.  In re R.R., 209
S.W.3d 112, 116 (Tex. 2006).  Prompt and permanent placement of the child in a
safe environment is also presumed to be in the child’s best interest.  Tex.
Fam. Code Ann. § 263.307(a) (West 2008).  The following factors should be
considered in evaluating the parent’s willingness and ability to provide the
child with a safe environment:

(1)
the child’s age and physical and mental vulnerabilities;

(2)
the frequency and nature of out-of-home placements;

(3)
the magnitude, frequency, and circumstances of the harm to the child;

(4)
whether the child has been the victim of repeated harm after the initial report
and intervention by the department or other agency;

(5)
whether the child is fearful of living in or returning to the child’s home;

(6)
the results of psychiatric, psychological, or developmental evaluations of the
child, the child’s parents, other family members, or others who have access to
the child’s home;

(7)
whether there is a history of abusive or assaultive conduct by the child’s
family or others who have access to the child’s home;

(8)
whether there is a history of substance abuse by the child’s family or others
who have access to the child’s home;

(9)
whether the perpetrator of the harm to the child is identified;

(10)
the willingness and ability of the child’s family to seek out, accept, and
complete counseling services and to cooperate with and facilitate an
appropriate agency’s close supervision;

(11)
the willingness and ability of the child’s family to effect positive
environmental and personal changes within a reasonable period of time;

(12)
whether the child’s family demonstrates adequate parenting skills, including
providing the child and other children under the family’s care with:

(A)
minimally adequate health and nutritional care;

(B)
care, nurturance, and appropriate discipline consistent with the child’s
physical and psychological development;

(C)
guidance and supervision consistent with the child’s safety;

(D)
a safe physical home environment;

(E)
protection from repeated exposure to violence even though the violence may not
be directed at the child;  and

(F)
an understanding of the child’s needs and capabilities;  and

(13)
whether an adequate social support system consisting of an extended family and
friends is available to the child.

Id. § 263.307(b);
In re R.R., 209 S.W.3d at 116.

Other,
nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:

(A)     the
desires of the child;

(B)     the
emotional and physical needs of the child now and in the future;

(C)     the
emotional and physical danger to the child now and in the future;

(D)     the
parental abilities of the individuals seeking custody; 

(E)     the
programs available to assist these individuals to promote the best interest of
the child;

(F)     the
plans for the child by these individuals or by the agency seeking custody;

(G)     the
stability of the home or proposed placement;

(H)     the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and

(I)      any
excuse for the acts or omissions of the parent.

Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).

          These
factors are not exhaustive; some listed factors may be inapplicable to some
cases, and other factors not on the list may also be considered when
appropriate.  In re    C.H., 89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id.  On
the other hand, the presence of scant evidence relevant to each factor will not
support such a finding.  Id.

Analysis

          Terrence
was only two and one-half years old at the time of trial.  Appellant testified
that he and Terrence were bonded with each other and that they would tell each
other they loved each other.  Terrence was healthy when he was born and did not
have any significant medical problems or special health needs before or after
removal other than being behind on his immunizations.  Terrence was
developmentally on target and had been evaluated by ECI,[6]
but he did not qualify for services.

          The
Department supervisor testified that the Department had opened a prior case on
Terrence, but she did not know how that case was resolved, nor did she know
whether appellant had any involvement in that case.  Upon removal in this case,
Terrence was placed with a foster family; in February 2011, the Department
placed him with appellant’s mother after the trial court ordered it to do so. 
Terrence was later removed from the care of appellant’s mother after she
refused to take a court-ordered drug test.  Terrence was placed in foster care
again; he was with his third foster family at the time of trial.

          Because
appellant was not forthcoming with the Department about his medical or mental
health records, and did not complete a psychiatric evaluation through a
Department provider, there was no evidence regarding any psychiatric
examinations.  The evidence does show that appellant is a long-time drug addict
and has a history of abusive conduct toward Mother, with whom he continued to
have an on and off again relationship after Terrence was removed.  The
Department supervisor did not think that appellant had dealt with his drug
issues and could not provide Terrence with a stable home.

          Although
wanting Terrence to be returned, appellant and his family showed a lack of
cooperation with the Department and the CASA worker.  The Department supervisor
testified that appellant was “frustrated, angry, and belligerent” and not open
to suggestions and help from the Department.  However, appellant also testified
that he had a hard time obtaining help from the Department setting up the
necessary counseling and psychiatric appointments, and there was evidence that
the first caseworker was negligent in originally setting up the service plan. 
According to the Department supervisor, reunification was the original goal
until September 2011; the goal was changed to termination then because neither
parent had made progress on their service plans.  Appellant contends that the
Department’s lack of cooperation excuses his behavior in failing to comply with
the service plan, but the Department’s omissions fail to explain appellant’s
continued lack of cooperation, especially with respect to drug testing and
violence against Mother.

          Appellant
testified that if Terrence were to be returned to him, he would probably spend
time going back and forth between his house and appellant’s mother’s house.  Although
the Department supervisor testified that she had no concerns about the physical
safety of appellant’s mother’s home, a CASA case supervisor testified that appellant’s
mother was uncooperative with letting CASA visit Terrence while in her care.  She
would not answer the door of her home when the supervisor and CASA volunteer
came to visit.  Appellant would not cooperate with CASA either, but the supervisor
only tried to contact him once, and she admitted that he could have been in
rehab at the time.

Terrence’s
CASA volunteer met appellant’s mother in her home in January 2011 the week
Terrence moved in with her.  Appellant’s mother would only let her in the
living room, but Terrence looked fine.  The volunteer had a difficult time
getting back to the house to visit, however; no one would return her phone
calls and no one would come to the door.  She tried to visit about twenty
times, sometimes several times a day over a three-month period; she got in only
one time because a man was walking out the door, and she caught him with the
door open.  At that time, Terrence was dirty, his pajamas were soiled, and he smelled
as if he had not been bathed.  In addition, the house was so cold she could see
her breath in the air.  Appellant’s mother would not let her into the rest of
house, so she did not know where Terrence was sleeping.

          According
to the CASA volunteer, Terrence was doing very well in foster care.  Appellant’s
interactions with him during visitation were positive.  She thought that his parents
loved him, but she did not think they could handle being together and raising
children.  The volunteer was not in favor of termination but rather
relinquishment with an open adoption.  Nevertheless, she thought termination was
in Terrence’s best interest.

          The
Department supervisor testified that Terrence would be easy to adopt; he had
not had problems at any of his placements.  Although his then-current foster
family had not expressed an interest in adopting him, one of his former foster
families had.

          Although
some factors in the best interest analysis do weigh in appellant’s favor,
particularly his love for and bond with his young child, we cannot say that the
evidence weighing in favor of termination is insufficient.  The jury could
reasonably have chosen to believe from the evidence that appellant had not
dealt with his drug addiction and was attempting to conceal that fact from the
Department, did not have a supportive or stable home environment for Terrence, was
not equipped to parent Terrence adequately, and had not changed his own
destructive patterns of conduct, particularly toward Mother.  Accordingly, we
conclude and hold that the evidence is legally and factually sufficient to
support the jury’s finding that termination was in Terrence’s best interest. 
We overrule appellant’s first issue.

Conclusion

          Having
overruled appellant’s dispositive issues, we affirm the trial court’s judgment.

                                                                             

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GARDNER, JJ.

 

DELIVERED:  September 13,
2012

 

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00004-CV

 

 


 
 
 In
 the Interest of T.L.R., Minor Child
  
 
 
 §
  
 §
  
 §
  
 §
 
 
 From County Court at Law
 No. 2
  
 of
 Wichita County (11699-JR-E)
  
 September
 13, 2012
  
 Opinion
 by Chief Justice Livingston
 
 


 

 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 









[1]See Tex. R. App. P. 47.4.





[2]In accordance with Texas
Rule of Appellate Procedure 9.8, we have referred to the child using a
pseudonym.  Tex. R. App. P. 9.8.





[3]According to appellant,
“[t]his is the Department’s best termination ground but basic ideas of fairness
require it to be reversed.”





[4]Mother signed an affidavit
relinquishing her rights and did not appeal the termination order.





[5]When appellant was in the
office and was asked for a hair sample, they could not find one because he had
shaved all his body.  Appellant said that was his practice.  The trial court’s
order stated that appellant’s failure to provide a specimen would be deemed a
positive result.





[6]ECI stands for Early
Childhood Intervention.  See In re C.H., No. 02-08-00239-CV, 2009 WL
2972640, at *10 (Tex. App.––Fort Worth Sept. 17, 2009, no pet.) (mem. op.).