**Opinion filed March 6, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00246-CV

_____

## IN THE INTEREST OF J.F., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 7597-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order of termination of the parental rights of the mother and father of J.F. Both parents appeal and, in two issues on appeal, challenge the legal and factual sufficiency of the evidence. We affirm.

The trial court found that the parents failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of J.F., who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. *See* TEX. FAM. CODE ANN.

§ 161.001(1)(O) (West 2014). The trial court also found that termination of each parent's parental rights would be in the best interest of the child. *See id.* § 161.001(2).

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001. To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. *Id.*

To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-

child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The evidence at the final hearing showed that J.F. was removed from his parents in June 2013 when he was approximately one year old. J.F.'s parents were living in a field in a tent; they had been kicked out of a motel where they had been living. They had no electricity, no water, and no food. J.F. was dirty all over. The parents were not cooperative and refused a family placement at that time. The father was arrested for disorderly conduct at the time of the removal. Neither parent was employed, and neither had transportation.

The mother testified at trial and admitted that she did not complete her family service plan. The mother completed a substance abuse assessment and a psychiatric evaluation, but she did not start her services until several months after she had signed her service plan. The record shows that the mother did not complete the recommended counseling sessions, did not attend parenting classes, did not follow through with drug tests when requested by the first caseworker, failed to attend individual counseling to address anger management and relation-ship issues, and failed to attend couple's counseling. The parents' second child was born in December 2013 while this case was pending, and at that time, the parents remained homeless. At the time of the final hearing, the mother was working in a hotel where she was provided with a room to stay in and $100 per week. She testified that she had been there since January 2014. However, a caseworker testified that the room was not appropriate for children. A Department investigator was concerned for the welfare of the parents' children based upon "past family violence." Additionally, just one week prior to the final hearing, the parents needed assistance to obtain food for themselves.

The licensed chemical dependency counselor who performed the father's substance abuse assessment testified that the father had mentioned that he had some terrifying hallucinations. This revelation caused the counselor concern, and he thought it needed to be addressed in a mental health evaluation. However, the father failed to attend any of the four appointments that were scheduled for him with a psychologist. The father, who had a prior felony conviction but no disabilities, did not have a job during the pendency of this case. The father threatened various people associated with this case, including the guardian ad litem, his own attorney, a caseworker, a supervisor, and the attorney representing the Department.

The caseworker who had been assigned to this case since November 2013 testified that he believed it would be in J.F.'s best interest for the parent-child relationship between J.F. and J.F.'s parents to be terminated and for J.F. to be adopted by a family that would love him and take care of him. The caseworker testified that the father was volatile and that the father's temper would be a safety concern. The caseworker also believed that J.F.'s emotional and physical well-being would be endangered if he were returned to his parents. The record showed that J.F. had developmental delays and did not walk until he was seventeen months old. When he was placed in foster care, he screamed when placed in a car seat or bathtub; the screaming sometimes lasted for the duration of the car ride or bath. However, J.F. made great improvements after being placed with his foster family, and his social skills improved. The foster family's home was stable, and living there was the only stability that J.F. had ever known.

In their first issue, the parents contend that the evidence is legally and factually insufficient to support the findings under Section 161.001(1)(O). To support the findings under subsection (O), the Department must have shown that each parent "failed to comply with the provisions of a court order that specifically

4

established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." FAM. § 161.001(1)(O).

One of the parents' contentions in their first issue is that the appellate record contains no trial court order applicable to subsection (O). A supplemental clerk's record, which was filed in this court after the parents' brief, contains a trial court order notifying the parents that they were required to take certain actions before J.F. would be returned to their care.[1] In that order, the trial court ordered the parents to fully comply with the court's orders and to "comply with each requirement set out" in their service plan. The family service plan, which was signed by both parents on July 31, 2013, was offered as an exhibit during the final hearing in this cause and was included in the reporter's record filed in this court. Thus, the record on appeal contains the appropriate documents relating to subsection (O).

The parents also contend that they completed some of the required services and that they "made significant efforts, within their capabilities, to comply with the service plan." Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)) (internal quotation marks omitted). Although the parents, particularly the mother, did comply with some portions of the trial court's order, the evidence, as detailed above, was undisputed that neither parent complied with the provisions of the trial court's order. Thus, there was clear

---

[1] We note that, in his request for the preparation of the appellate record, the parents' attorney did not request that the district clerk include this order.

and convincing evidence that each parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of J.F.

Furthermore, the record shows that, at the time of the final hearing, J.F. had been in the Department's care for one year and that J.F. had been removed from the parents' care due to abuse or neglect. The supreme court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240. Evidence of the family's living situation and the lack of food and water at the time of removal constituted sufficient evidence from which the trial court could have determined by clear and convincing evidence that J.F. had been removed because of a substantial risk of abuse or neglect. The parents' first issue is overruled.

In their second issue, the parents challenge the legal and factual sufficiency of the evidence to support the best interest findings. We hold that, based on the evidence presented at trial and the *Holley* factors, the trier of fact could reasonably have formed a firm belief or conviction that termination of the mother's and the father's parental rights would be in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of J.F. now and in the future, the emotional and physical danger to J.F. now and in the future, the parental abilities of the parents, the plans for J.F. by the Department, the instability of the parents' home, the stability of the child's placement, acts and omissions indicating that the parent-child relationship was not a proper one, the failure of the parents to attend parenting classes, the threats made by the father while this case was pending, the father's volatile temper, and the

parents' inability to provide for J.F.'s needs, we hold that the evidence is sufficient to support the findings that termination of the mother's and the father's parental rights is in the best interest of J.F. *See id.* We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. The parents' second issue is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE


March 6, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.